IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROBERT W. FARRELL, SR.,

*Plaintiff*,

vs.                                          Case NO. 22-2102-EFM

BUTLER TRANSPORT, INC.,

*Defendant*.

## MEMORANDUM AND ORDER

Plaintiff Robert W. Farrell brings this action against his former employer, Butler Transport, Inc., for claims including age discrimination under the Age Discrimination in Employment Act (ADEA),[1] hostile work environment, retaliation in violation of the ADEA, and breach of contract. Defendant has moved to dismiss one of the Kansas law claims in the Complaint: that Plaintiff was constructively discharged from his employment in May 2021 due to retaliation for his reporting the state of the workplace. The motion (Doc. 7) raises a very narrow legal issue. Can the tort of retaliatory discharge be supported by a constructive discharge, as opposed to formal termination? The Court concludes that, upon a sufficient factual showing, a constructive discharge may support a claim for retaliatory discharge, and thus

---

[1] 29 U.S.C. § 621.

it cannot say that such a claim must in all circumstances fail as a matter of law.  Therefore, the Court denies the motion.

## I.      Factual and Procedural Background

Plaintiff alleges in his Complaint that he was hired by Defendant in 2018.  At some point Plaintiff worked from home because of the Covid pandemic.  He was asked to return to work in February 2021, and left the job in May 2021.  As part of his factual background, Plaintiff generally alleges that he "was the subject of numerous age-related comments, by employees and management alike."  In March and April 2021, comments about his age "became more frequent and severe."  Plaintiff gives no examples of what these comments may have been.

In the section relation to the retaliation, Plaintiff alleges:

34.     In response to the various reports Plaintiff made to regulatory authorities, Butler management made it increasingly difficult for Plaintiff to continue to work at Butler. For example, during the Covid 19 pandemic, he was called back to work in the office, even though some employees continued to work from home, and management increased the number and severity of comments concerning Plaintiff's age, while neglecting to address Plaintiff's concerns regarding discrimination.

35. After Plaintiff again raised concerns with Jeffrey Green about age discrimination, both in person and in writing, management continued to do nothing to address Plaintiff's concerns.

36. Management's failure to act caused Plaintiff continued and increasing distress, such that he could no longer continue to work in the atmosphere Butler had created.

Notably, the Court is not asked to address whether an employer's failure to stop unspecific "age-related comments" by co-workers would indeed amount to constructive discharge.  While this seems doubtful, the matter is not presented to the Court under Federal

Rule of Civil Procedure 56.  Defendant's only argument, it its present motion, is that constructive discharge in retaliation for whistleblowing is not actionable in Kansas.

## II.      Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[2] The court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[3]  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[4]  The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[5]  Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[6]

## III.      Analysis

As noted by the Kansas Supreme Court in *Brown v. United Methodist Homes for the Aged*,[7] while at will employees may generally be dismissed for any reason, "dismissal of

---

[2] Fed. R. Civ. P. 12(b)(6).

[3] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[5] *See Robbins v. Okla.*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[6] *Iqbal*, 556 U.S. at 678-79 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.") (citation omitted).

[7] 249 Kan. 124, 815 P.2d 72 (1991).

employees for reasons violative of a particular public policy [is] actionable."[8]   Thus, the employer cannot invoke the protection of the at-will employment doctrine "when an employee is discharged in retaliation for opposing an illegal or unethical activity of the employer, in retaliation for filing workers compensation claims, in retaliation for exercising rights under labor-management relations statutes, as a penalty for refusing to take a polygraph exam, as a penalty for taking time to serve on jury duty, and for various other violations of public policy interests."[9]

Defendant's motion largely rests on two federal decisions from the 1990s.   In *Diepenbrock v. Board of Educ.*,[10] the plaintiff school teacher argued he had been constructively discharged after participating in school board elections.  Judge Kelly concluded that "[t]he court need not address a claim for retaliatory discharge in violation of Kansas public policy because Diepenbrock was not discharged; he resigned."[11]  Similarly, in 1998 Judge Saffels also observed in *White v. Midwest Office Tech.*[12] that "the court does not believe that the Kansas Supreme Court would recognize a constructive discharge as sufficient to state an actionable retaliatory discharge claim."[13]

---

[8] 815 P.2d at 81.

[9] *Id*. (citing *Morriss v. Coleman* Co., 241 Kan. 501, 738 P.2d 841 (1987)).

[10] 1994 WL 613421 (D. Kan. 1994).

[11] *Id*. at *8.

[12] 5 F. Supp.2d 936 (D. Kan. 1998).

[13] *Id*. at 955.

However, *Diepenbrock* and *White* both rest on limited authority. *Diepenbrock* cites two Kansas decisions. First, it noted *Brown*'s observation that "dismissal of employees for reasons violative of a particular public policy are actionable."[14] *Diepenbrock* focused on *Brown*'s use of the term *dismissal*. But the plaintiff in *Brown* had been expressly terminated by his employer, ostensibly for violating attendance rules,[15] so the court was not called on to determine if a constructive dismissal might also be actionable.

The same is true of the second case, *Marinhagen v. Boster, Inc.*[16] In that case, the Kansas Court of Appeals concluded that the trial court had erred in granting summary judgment on a retaliation claim where it was unclear how plaintiff was terminated. However, the plaintiff in *Marinhagen* made no claim of constructive discharge—the factual dispute was purely whether plaintiff voluntarily resigned or was terminated:

> There is also conflicting evidence as to conversations Shirley [Marinhagen] and Boster had with Mary Abdin [a vocational specialist]. Neither party offered testimony from Abdin. Neither party communicated with each other during this period. Depending upon whom one believes, the trier of fact might determine either that Shirley quit since she never called Boster or that she waited for Boster to call her back to work and he never did. The trier of fact must determine whether Shirley resigned, whether Boster fired her, or whether an innocent miscommunication between the two of them led to Boster filling her position with someone else.[17]

Since the 1990s, this court has recognized that it remains an open question in Kansas whether an employer can constructively discharge an employee in retaliation for engaging in

---

[14] 815 P.2d at 81.

[15] *Id.* at 78.

[16] 17 Kan. App. 2d 532, 840 P.2d 534 (1992).

[17] 840 P.2d at 540.

protected conduct.  In 2006, Judge Vratil noted the decisions in *Diepenbrock* and *White*, but also observed that "Kansas courts have neither recognized nor foreclosed a common-law claim of constructive retaliatory discharge."[18]  However, she was not required to decide the issue, finding that in the case before her the facts alleged by plaintiff in any event would not have been so intolerable as to amount to a constructive discharge.

Similarly, in *Baldwin v. Corecivic of Tenn., LLC*,[19] Judge Broomes also observed that the Kansas Supreme Court had yet to address the issue.  "Under the circumstances, this court declines to make a prediction about future rulings of the Kansas Supreme Court on retaliatory constructive discharge."[20]  Citing *Diepenbrock* and *Marinhagen*, the court granted summary judgment on plaintiff's retaliation claims.

The cases cited in response by Plaintiff do not materially support his position.  Two of the decisions[21] only address the general standards for constructive discharge, they do not involve any claim of retaliatory discharge based on a constructive discharge.  A third cited case, *Cowles v. Nat'l Credit Servs. Corp.*,[22] is similarly inapposite.  There, the Kansas Court of Appeals affirmed the district court's dismissal of plaintiff's wrongful termination claim.  The court noted some confusion in the exact nature of the plaintiff's claim:

---

[18] *Balfour v. Medicalodges, Inc*., 2006 WL 3760410, at *27 (D. Kan. 2006).

[19] 2020 WL 1952521 (D. Kan. 2020).

[20] *Id*. at *10.

[21] *S.E. Kan. Multi-Cnty. Health Dep't v. State of Kan. Sec. Bd. of Rev.*, 2014 WL 4081990, at *7 (Kan. Ct. App. 2014) (finding no reversible error in award of employment benefits based on finding employee was constructively discharged); *Slobodzian v. Kan. Emp. Sec. Bd. of Rev.*, 2012 WL 4372982, at *9-10 (Kan. App. 2012) (same).

[22] 2001 WL 37132494 (Kan. Ct. App. 2001).

> Cowles argues this is not "strictly" a whistleblowing claim, claiming *Palmer* and its progeny merely provide a "backdrop." She has never specified any other recognized cause of action for wrongful termination on which she may proceed. Nor does it appear that Cowles is asking the court to recognize a new public policy exception. Moreover, Cowles refers to her claim as one for "constructive discharge," while fully acknowledging that constructive discharge is not a cause of action in and of itself, but is merely an element of her wrongful termination claim.[23]

More importantly, as in the decision by Judge Vratil, the case provides no support one way or the other because the court determined that the plaintiff "has not provided any evidence that she was terminated, constructively or otherwise, from her employment."[24]

However, the history of public policy retaliation decisions, both in Kansas and other states, presents strong reason for concluding that *Diepenbrock* and *White* do not correctly reflect the evolution of the law.

The Kansas Supreme Court has emphasized that "the common-law tort of retaliatory discharge [is permitted] as a limited exception to the at-will employment doctrine when it is necessary to protect a strongly held state public policy from being undermined."[25]  The limitation relates to the public policy interests which may support a claim, with the court "endors[ing] public policy exceptions in four circumstances: (1) filing a claim under the Kansas Workers Compensation Act, K.S.A. 44–501 *et seq.*; (2) whistleblowing; (3) filing a claim under the Federal Employers Liability Act (FELA), 45 U.S.C. § 51 (2006) et seq.; and (4) exercising a public employee's First Amendment right to free speech on an issue of public concern."[26]

---

[23] *Id*. at *2.

[24] *Id*. at *3.

[25] *Campbell v. Husky Hogs*, 292 Kan. 225, 255 P.3d 1, 5 (2011)

[26] *Id*. at 4.

The Kansas Supreme Court has carefully limited the *types* of policy interests which will support a retaliatory discharge claim. But, where a recognized policy interest is subjected to potential subversion, Kansas courts have shown no hesitation in vigorously protecting employees. This concern for the potential subversion of the public good was present at the inception of the tort in Kansas, with the Court of Appeals recognizing in *Murphy v. City of Topeka*[27] that "[t]o allow an employer to coerce employees in the free exercise of their rights under the [workers compensation] act would substantially subvert the purpose of the act."

The need to prevent such subversion has led the Kansas Supreme Court to expansive protection of employee rights. Thus, in *Pfeifer v. Federal Exp. Corp.*[28] the court held that the contract between FedEx and its employees which shortened the time to bring claims against the company was unlawful to the extent it shortened the time to bring claims for retaliatory discharge. Although generally such contracts shortening the time for an action are not otherwise prohibited by statute, the contract at issue in *Pfeifer* was deemed unenforceable as it "potentially subverts the public interest in deterring employer misconduct."[29]

Similarly, in *Brigham v. Dillon Cos.*,[30] the Kansas Supreme Court concluded that an employee who is demoted rather than fired may also bring an action for retaliation. "To conclude otherwise would [be an] obvious message . . . for employers to demote rather than

---

[27] 6 Kan. App. 2d 488, 630 P.2d 186, 192 (1981).

[28] 297 Kan. 547, 304 P.3d 1226 (2013).

[29] *Id.* at 1234.

[30] 262 Kan. 12, 935 P.2d 1054 (1997).

discharge employees in retaliation for filing a workers compensation claim or whistleblowing."[31] The result would be that "employers could negate this court's decisions recognizing wrongful or retaliatory discharge by taking actions falling short of actual discharge."[32]

In *Hill v. State*,[33] the plaintiff highway patrol trooper was reassigned from Cherokee County to Finney County after he was reinstated following a disciplinary appeal.  The trooper brought a common law retaliation claim, alleging that this transfer from one corner of Kansas to another was in retaliation for his having exercised his rights under the Civil Service Act.[34]  The district court granted summary judgment, finding the transfer was not "the essential equivalent of a demotion."[35]  The Court of Appeals affirmed, concluding the transfer was not sufficiently adverse to be actionable, as it "resulted in no harm, that is, no loss of job, job status, pay, or benefits."[36]

The Kansas Supreme Court reversed, holding that "a common-law retaliation claim may be premised on any employment action that is materially adverse to a reasonable employee, i.e., harmful to the point that it could well dissuade a reasonable worker from exercising the worker's rights."[37]  The court acknowledged that "the Kansas caselaw to date deals with terminations and demotions, but this is because those happened to be the facts presented—not because they

---

[31] *Id.* at 1060.

[32] *Id.*

[33] 310 Kan. 490, 448 P.3d 457 (2019).

[34] K.S.A. § 75-2949(g).

[35] 448 P.3d at 463.

[36] *Hill v. State*, 53 Kan. App. 2d 155, 388 P.3d 122, 147 (2016).

[37] 448 P.3d at 474 (citation, internal quotation, and alteration omitted).

represented some minimum threshold of harm necessary to invoke a cause of action."[38]   What mattered was whether the employer's action would have a "coercive effect" which would "undermine the public policy goal" at issue.[39]   The court then approvingly quoted the observation of the United States Supreme Court in *Burlington N. and Santa Fe Ry. Co. v. White*[40] on the highly contextual nature of whether a employer's action may be deemed sufficiently adverse to support a retaliation claim"

> "[T]he significance of any given act of retaliation will often depend upon the particular circumstances. Context matters. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children. A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. *But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination.*[41]

Three months after *Hill*, Judge Murgia cited that decision and found that the tort of retaliation "has been expanded beyond incidents of termination to cover coercive and adverse employment actions."[42]   As a result, the plaintiff's claim that the defendant "retaliated against

---

[38] *Id.* at 468.

[39] *Id.*

[40] 548 U.S. 53 (2006).

[41] 448 P.3d at 469 (quoting *Burlington N.*, 548 U.S. at 56) (emphasis in *Hill*).

[42] *Ross v. Pentair*, 2019 WL 6700402, at *5 (D. Kan. 2019).

[him] by denying him opportunities for promotion after he complained about safety standards," would be "sufficiently adverse" to support a Kansas public policy retaliation claim.[43]

Courts have recognized that a constructive discharge is more onerous than a failure to promote an employee, which by itself, generallly will not rise to the level of a constructive discharge.[44]   That is, for the ordinary employee, the denial of a promotion is far less damaging than having to face a work environment so deliberately toxic and offensive they have no choice but to quit the job entirely.   It would be anomalous for Kansas law to recognize public policy retaliation claims based or a refusal to promote or a demotion, but bar such claims where they employer has engineered the employee's departure through a constructive discharge.

The doctrine of constructive discharge is designed to prevent "employer-attempted 'end runs' around wrongful discharge," based on the recognition that "[a]lthough the employee may say, 'I quit,' the employment relationship is actually severed involuntarily by the employer's acts, against the employee's will."[45]   By the same token, "employers cannot escape by coercing a resignation instead of formally uttering the words "you're fired.' "[46]   That is, substance controls over mere form.

---

[43] *Id*. at *4-5.

[44] *See Coe v. Yellow Freight Sys*., 646 F.2d 444, 454 (10th Cir. 1981) (District court did not err in refusing to instruct on plaintiff's constructive discharge claim, as "[t]he only evidence offered at trial was to the effect that Yellow Freight had refused to promote him or to transfer him to another position within the company."); *Johnson v. Neopost, Inc*., 2007 WL 9701787, at *25 (N.D. Ga. Nov. 8, 2007) ("a failure to promote an employee is not generally found to be sufficient to establish a constructive discharge"), *report and recommendation adopted*, 2008 WL 11406067 (N.D. Ga. 2008).

[45] *Turner v. Anheuser-Busch, Inc*., 7 Cal. 4th 1238, 876 P.2d 1022, 1025, 1030 (1994) ("An actual or constructive discharge in violation of fundamental public policy gives rise to a tort action in favor of the terminated employee.").

[46] *Strozinsky v. Sch. Dist. of Brown Deer*, 237 Wis. 2d 19, 66, 614 N.W.2d 443, 465-66 (2000).

Forcing an employee to "quit" in retaliation for exercising important legal rights has been repeatedly recognized as actionable in other states.  In fact, the overwhelming majority of state cases addressing this issue have concluded that a constructive discharge in violation of public policy is actionable under state law.[47]  Thus, the Nebraska Supreme Court thus followed the Kansas decision in *Brigham* in finding that a retaliatory demotion is actionable, as otherwise "it would create an incentive for employers to merely demote, rather than discharge, employees who exercise their rights."[48]  Similarly, the Indiana Court of Appeals has concluded that "an employer's acts of creating working conditions so intolerable as to force an employee to resign in response to an employee's exercise of his statutory right to file a worker's compensation claim also creates a deleterious effect on the exercise of this important statutory right and would impede the employee's ability to exercise his right in an unfettered fashion without being subject to reprisal."[49]  As the Maryland Court of Appeals argued, "If an employer directly discharges an at-will employee in such manner as to make the discharge an abusive one under [state law], it

---

[47] *See Ferren v. Westmed Inc.*, 2021 WL 2012654, at *3 (D. Ariz. May 20, 202) (Arizona law); *Sterling Drug, Inc. v. Oxford*, 294 Ark. 239, 743 S.W.2d 380, 386 (1988); *Cejka v. Vectrus Sys. Corp.*, 350 F. Supp. 3d 967, 974, 976 (D. Colo. 2018); *Seery v. Yale-New Haven Hosp.*, 17 Conn. App. 532, 554 A.2d 757, 761 (1989); *Balmer v. Hawkeye Steel*, 604 N.W.2d 639, 643 (Iowa 2000); *GTE Prod. Corp. v. Stewart*, 421 Mass. 22, 653 N.E.2d 161, 168 (1995); *Vagts v. Perry Drug Stores, Inc.*, 204 Mich. App. 481, 488, 516 N.W.2d 102, 105 (1994); *Dillard Dept. Stores, Inc. v. Beckwith*, 115 Nev. 372, 989 P.2d 882, 886 (1999); *O'Donnell v. Genzyme Corp.*, 2015 WL 1119719, at *6 (N.D. Ohio, 2015), *aff'd*, 640 F. App'x 468 (6th Cir. 2016); *Collier v. Insignia Fin. Grp.*, 981 P.2d 321, 324 (Okla. 1999); *Dalby v. Sisters of Providence in Oregon*, 125 Or. App. 149, 865 P.2d 391, 394-95 (1993); *Geraghty v. E. Bradford Twp.*, 584 F. Supp. 3d 10, 20 (E.D. Pa. 2022) (Pennsylvania law); *Touchard v. La-Z-Boy Inc.*, 148 P.3d 945, 954 (Utah 2006); *Slack v. Kanawha County Hous. & Redev. Auth.*, 188 W.Va. 144, 423 S.E.2d 547, 558 (1992).

[48] *Trosper v. Bag 'n Save*, 273 Neb. 855, 734 N.W.2d 704, 710-11 (2007) (citing *Brigham*, 935 P.3d at 1059-60).

[49] *Tony v. Elkhart Cnty.*, 851 N.E.2d 1032, 1040 (Ind. Ct. App. 2006).

-12-

would defy both reason and fairness to immunize him from liability simply because he has been clever enough to effect the abusive separation by forcing a resignation."[50]

Only one state, Illinois, has held that a constructive discharge in retaliation for exercising important public policy rights is not actionable.[51]   And the Kansas Supreme Court has twice expressly declined to follow the Illinois position.   In *Brigham*, the court noted the fractured opinions in *Zimmerman v. Buchheit of Sparta,* Inc.[52], the leading Illinois case, which declined to recognize a claim for retaliatory demotion.  Two of the concurring justices believed the tort itself should be abolished; two of the dissenting justices believed retaliatory demotion should be actionable.  "Hence, four of the seven justices of the Illinois Supreme Court believed that it would be inconsistent to retain the tort of retaliatory discharge without recognizing a cause of action for retaliatory demotion.  We agree."[53] Concluding the inconsistency could not be ignored or rationalized away, the Kansas Supreme Court proceeded to recognize that retaliatory demotion was actionable.

Two decades later, in *Hill v. State*, the Kansas Supreme Court again noted the Illinois decision, but observed that "our court in *Brigham* adopted a different approach, extending the tort to include both the discharge and the arguably less harmful demotion that mimicked discharge's coercive effect."[54]  As noted earlier, in *Hill*, the court expressly preferred the federal

---

[50] *Beye v. Bureau of National Affairs*, 59 Md. App. 642, 477 A.2d 1197, 1203 (1984).

[51] *See Stadel v. Heritage Operations Grp., LLC*, 2022 WL 123643, at *2 (Ill. Ct. App. 2022) (given controlling Illinois precedent, "constructive discharge is insufficient to sustain an action for retaliatory discharge").

[52] 245 Ill.App.3d 679, 185 Ill Dec. 921, 615 N.E.2d 791 (1993

[53] 935 P.2d at 1058.

[54] 448 P.3d at 468.

approach taken in *Burlington N.*, a Title VII case holding that whether an employment action is "materially adverse" depends on the circumstances of the case.

In the last two decades, Kansas courts have repeatedly broadened the scope of the retaliatory actions to include "public policy violations short of wrongful termination."[55]  At the present time, and depending on the circumstances of the case, a retaliation claim may be predicated on a demotion, a refusal to promote, or even (as in *Hill*) as transfer of duty station.  In each instance, Kansas courts have been concerned with the danger of an employer circumventing or subverting public policy.  Given this history, Kansas courts would almost certainly agree with the virtually unanimous weight of authority in other states, that a constructive discharge, with its even greater power to coerce employees, is also actionable.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 7) is hereby **DENIED**.

**IT IS SO ORDERED**.

Dated this 9th day of November, 2022.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[55] 448 P.3d at 467.

-14-